808 F.2d 1039
 25 ERC 1571, 17 Envtl. L. Rep. 20,499
 MARYLAND CONSERVATION COUNCIL, INC., Quince Orchard Valley
Citizens Association, Inc., West Riding Citizens
Association, Inc., Appellants,
v.
Charles GILCHRIST, as County Executive of Montgomery County,
Lewis Roberts, as Chief Administrative Officer of Montgomery
County, Robert McGarry, as Director of Montgomery County
Department of Transportation, John J. Clark, as Director of
Transportation Planning for Montgomery County Department of
Transportation, Robert Merryman, as Chief, Division of
Transportation Engineering, Montgomery County Department of
Transportation, Appellees.
 No. 86-3967.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 9, 1986.
Decided Dec. 22, 1986.
Rehearing and Rehearing En Banc Denied March 4, 1987.
 
 David S. Eggert (Timothy J. Lindon, Neil M. Goodman; Arnold & Porter, Washington, D.C., Edwin V. Dutra, on brief), for appellants.
 Diane R. Kramer, Asst. Co. Atty. (Paul A. McGuckian, Rockville, Md., on brief), for appellees.
 Before WINTER, Chief Judge, ERVIN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 The Maryland Conservation Council and two other citizens' groups sought to enjoin officials of Montgomery County, Maryland from authorizing further construction of a highway allegedly designed to pass through Seneca Creek State Park. The plaintiffs alleged, inter alia, that the County's construction program violated the National Environmental Policy Act (NEPA), 42 U.S.C. Secs. 4331 et seq. (1982). Without hearing oral argument, the district court granted the defendants' motion to dismiss. We reverse in part and affirm in part.
 
 I.
 
 2
 Before proceeding with a statement of the facts, we must decide whether the district court's order should be treated as the entry of summary judgment or the granting of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P. The question arises because the district court took notice of materials other than pleadings filed with the motion to dismiss. The parties agree that the district court decided only a motion to dismiss, and we also treat its ruling as one sustaining a motion to dismiss, especially because the district court did not purport to give notice to the parties that it would proceed under Rule 56 or to give them an opportunity to present "all materials made pertinent to a motion for summary judgment by Rule 56." Rule 12(b). It follows that for purposes of this appeal we treat as proved all facts well pleaded. They are as follows:
 
 
 3
 Seneca Creek State park is located in Montgomery County, Maryland, near Gaithersburg and Germantown. It comprises over 6,000 acres and follows Great Seneca Creek for about 12 miles. The State of Maryland acquired much of the park land with federal funds, including $6.2 million received from the Department of the Interior. The area in which the park is located has existing and future deficits in day-use recreational facilities.
 
 
 4
 In 1971, Montgomery County began planning to construct the "Great Seneca Highway" through the park to relieve traffic congestion in the Gaithersburg-Germantown area. Because the project had been considered for federal-aid highway funds, the Department of Transportation and the County prepared a draft environmental impact statement (EIS) in 1983. The final EIS is still pending. Although the County received $245,000 in federal funds for planning the highway, there is no allegation that it has sought additional federal financing. There is, however, an allegation that additional federal funds may be sought, i.e., that "additional ... Federal Aid, will be pursued to the extent feasible."
 
 
 5
 The plaintiffs and other environmentalists concede that some highway access through the park is essential. Controversy exists, however, over which route, or "alignment," the highway should take. Environmentalists, the National Park Service, and the Environmental Protection Agency have urged that the County should upgrade existing highways so as to hold to a minimum damage to the park. The County did begin improvements on existing roads in the vicinity of the park, but it also began authorizing road construction along Alternate 2A, a route preferred by it that did not coincide with existing highways. If extended through the park, Alternate 2A would take three times as much park land as any other alternative route. Two federal agencies, the National Park Service and the Environmental Protection Agency, have expressed dissatisfaction with Alternate 2A, the National Park Service characterizing it as having "the most severe, negative effects" on the park.
 
 
 6
 Private real estate developers, who have undertaken to construct real estate projects in the vicinity of Alternate 2A, have been required to develop the two segments of Alternate 2A entering and leaving the park, but not the middle segment, which would actually run through the park. The County has required them to dedicate to the County the right-of-way for that part of Alternate 2A passing through their properties and to design and grade four lanes and pave two lanes along the right-of-way. The County claims that this paving is merely for "access" to each subdivision. By this means, construction of approximately two miles, or 26% of the total, of Alternate 2A has already commenced on both sides of the park.
 
 
 7
 In 1985, the Maryland Conservation Council and two other citizens' groups filed suit against officials of Montgomery County, seeking to enjoin further construction along Alternate 2A other than that strictly needed for local access. The complaint alleges that the County has violated NEPA by authorizing construction of segments of the highway before the Department of Transportation has issued its final EIS, since construction will require federal approvals under Sec. 404 of the Federal Water Pollution Control Act, 33 U.S.C. Sec. 1344 (the Water Act), under Sec. 6(f) of the Land and Water Conservation Fund Act, 16 U.S.C. Sec. 460l -8(f)(3) (the Conservation Act), and under Sec. 4(f) of the Department of Transportation Act, 49 U.S.C. Sec. 303 (the Transportation Act), all of which allegedly render the construction a major federal action. The complaint also asserts that the County has directly violated Section 4(f) of the Transportation Act, 49 U.S.C. Sec. 303, which requires the Secretary of Transportation to make certain environmental determinations before approving a transportation program requiring the use of a public park. Finally, the complaint alleges that the County has directly violated Section 6(f) of the Conservation Act, 16 U.S.C. Sec. 460l -8(f)(3), which requires the Secretary of the Interior to approve any "conversion" from recreational use of park land that was acquired with federal aid, such as Seneca Creek Park. The district court granted the County's motion to dismiss all three counts for failure to state a claim upon which relief could be granted. We reverse as to NEPA but affirm as to the Transportation Act and the Conservation Act.II.
 
 
 8
 We turn first to plaintiffs' claim under NEPA. That statute requires an EIS for "major Federal actions" that significantly affect the environment, 42 U.S.C. Sec. 4332(C), and authorizes the courts to enjoin federal actions that do not comply, see West Virginia Highlands Conservancy v. Island Creek Coal Co., 441 F.2d 232 (4 Cir.1971). See also 40 C.F.R. Sec. 1506.1. The district court held that the Great Seneca Highway is not a "federal" action; it therefore dismissed the NEPA count for failure to state a claim.
 
 
 9
 A non-federal project is considered a "federal action" if it cannot "begin or continue without prior approval of a federal agency." Biderman v. Morton, 497 F.2d 1141, 1147 (2 Cir.1974); Foundation on Economic Trends v. Heckler, 756 F.2d 143, 155 (D.C.Cir.1985). "Cases finding 'federal' action emphasize authority to exercise discretion over the outcome." W. Rodgers, Environmental Law Sec. 7.6, at 763 (1977).
 
 
 10
 We conclude that the Great Seneca Highway is a federal action within the meaning of NEPA. Because the highway, wherever located, must inevitably cross Seneca Creek State Park, a park established with a grant of substantial federal funds, the approval of the Secretary of the Interior for conversion of park land to other than public outdoor recreation uses will be required. Conservation Act Sec. 6(f), 16 U.S.C. Sec. 460l -8(f)(3). In addition, it is alleged that the section of the highway which will cross the park will impinge on wetlands when it crosses Seneca Creek so that a permit from the Secretary of the Army to dredge wetlands will be required pursuant to the provisions of Sec. 404 of the Water Act, 33 U.S.C. Sec. 1344. Finally, if defendants seek additional federal funds for the construction of the highway, they will be required to obtain the approval of the Secretary of Transportation for the use of park land for a transportation program under Sec. 4(f) of the Transportation Act, 49 U.S.C. Sec. 303(c). In each instance, each Secretary will be required to consider a final EIS before exercising his or her authority. It is certain that this must be done by the Secretary of the Interior; it is almost certain that this must be done by the Secretary of the Army; and it is possible that this must be done by the Secretary of Transportation. Because of the inevitability of the need for at least one federal approval, we think that the construction of the highway will constitute a major federal action.
 
 
 11
 Because it is inevitable that the construction of the highway will involve a major federal action, it follows that compliance with NEPA is required before any portion of the road is built. This conclusion effectuates the purpose of NEPA. The decision of the Secretary of the Interior to approve the project, and the decision of any other Secretary whose authority may extend to the project, would inevitably be influenced if the County were allowed to construct major segments of the highway before issuance of a final EIS. The completed segments would "stand like gun barrels pointing into the heartland of the park ..." Named Individual Members of the San Antonio Conservation Society v. Texas Highway Department, 400 U.S. 968, 971, 91 S.Ct. 368, 369, 27 L.Ed.2d 338 (1970) (Black, J., dissenting from denial of certiorari). See also Named Individual Members of the San Antonio Conservation Society v. Texas Highway Department, 446 F.2d 1013, 1023 (5 Cir.1971), cert. denied, 406 U.S. 933, 92 S.Ct. 1775, 32 L.Ed.2d 136 (1972). It is precisely this sort of influence on federal decision-making that NEPA is designed to prevent. Nonfederal actors may not be permitted to evade NEPA by completing a project without an EIS and then presenting the responsible federal agency with a fait accompli.
 
 
 12
 We are committed to the proposition that when a major federal action is undertaken, no part may be constructed without an EIS. In Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323 (4 Cir.1972), where we concluded that an EIS was required before a road known as Arlington I-66 could be located and constructed, we considered whether construction which had already begun could continue pending completion of the EIS. We held that it could not, observing that when the Secretary of Transportation acted on the completed EIS and determined the location of the road, he could consider previous investment: "[i]f investment in the proposed route were to continue prior to and during the Secretary's consideration of the environmental report, the options open to the Secretary would diminish, and at some point his consideration would become a meaningless formality." Id. at 1333. For this reason we held that an injunction against further construction should issue until the Secretary took final action on the EIS. Id. at 1334.
 
 
 13
 The district court was in error when it failed to consider whether the authority of the Secretary of the Interior over the project made it "federal." The district court focused on a related definition of "federal action": whether the project is suffused with enough federal involvement to qualify as a "partnership" between federal and non-federal entities. See Biderman, 497 F.2d at 1147; Ely v. Velde, 451 F.2d 1130 (4 Cir.1971). Because we conclude that the inevitable exercise of federal approval power makes the Great Seneca Highway a federal action, we need not decide whether the highway is also the product of a state-federal partnership.
 
 
 14
 We therefore hold that the complaint states a cause of action under NEPA, and we remand the case to the district court for further proceedings, including consideration of plaintiff's motion for a preliminary injunction. Plaintiffs ask us to grant injunctive relief in this appeal. Such extraordinary action, we think, would be highly improper, because there are unresolved disputes in essential facts. For example, the district court must determine whether any part of the County's construction program is essential for access to the land, as the County claims, and whether the program in fact violates NEPA and its regulations by limiting "the choice of reasonable alternatives" available to federal decision-makers. 40 C.F.R. Sec. 1506.1(a)(2) (1985).
 
 III.
 
 15
 Although we conclude that the complaint alleges a meritorious cause of action for violation of NEPA, we agree with the district court that it does not allege a cause of action for a present violation of the Conservation Act or the Transportation Act. Aside from possible questions of parties, ripeness and exhaustion of administrative remedies, the fact is that defendants are not alleged yet to have made any application to convert park lands to highway use or to have undertaken any such conversion. The complaint therefore fails to state a claim under the Conservation Act. Nor are defendants alleged yet to have made any application for federal funds to finance the cost of construction of this multi-million dollar highway. It is true that plaintiffs allege that defendants received a grant of $245,000 in federal funds for what is obviously preliminary planning for the road, but this sum is so small compared to the actual cost of construction of eight miles of a multi-lane highway that we think it insufficient to render the highway a federally-funded transportation project. The complaint therefore fails to state a claim under the Transportation Act. In considering both the Conservation Act and the Transportation Act, we are mindful that, unlike NEPA, neither statute requires preliminary studies of "proposed" action. See 42 U.S.C. Sec. 4332(C).
 
 IV.
 
 16
 Accordingly, the district court's judgment dismissing the claim under the Transportation Act and the Conservation Act is affirmed. Its dismissal of the claim under NEPA is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 17
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.