NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0042n.06

No. 17-3152

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CAROL KAUFMANN, et. al.,

     Petitioners,

v.

FEDERAL AVIATION
ADMINISTRATION, et al.,

     Respondents.

FILED
Jan 22, 2018
DEBORAH S. HUNT, Clerk

ON PETITON FOR REVIEW OF A
FINAL ORDER OF THE FEDERAL
AVIATION ADMINISTRATION

BEFORE:    CLAY, GIBBONS, and BUSH, Circuit Judges.

**CLAY, Circuit Judge.** Carol Kaufmann, Chris McCoy, and Phyllis Hawkins (residents who live near Bowman Field Airport in Kentucky) and Plea for the Trees (an unincorporated group of residents owning property in the area) timely petition this Court to review the Record of Decision ("ROD") issued by the Federal Aviation Administration ("FAA") in the FAA's administrative proceeding pertaining to this matter. The ROD found that a proposed project involving Bowman Field would have no significant environmental impact, even though the project would require trimming or removing 104 trees near the airport's runways. For the reasons set forth below, we **DISMISS** the petition for review.

**BACKGROUND**

Bowman Field is located five miles southeast of downtown Louisville, Kentucky. It relieves congestion at the nearby Louisville International Airport, the third-busiest cargo airport

in North America, and provides general aviation access to the local community. Bowman Field has two runways and generates about 80,000 annual flight operations. The airport is operated by the Louisville Regional Airport Authority ("LRAA"), a Kentucky governmental body.

In February 2012, the FAA determined that trees on privately owned property near Bowman Field's runways made nighttime landings dangerous when Instrument Flight Rules ("IFR") are in effect.[1] Consequently, the FAA prohibited instrument-guided nighttime landings on three of the four runway ends, reducing the number of nighttime landings the airport can support. Previously, such landings were permitted on all four runway ends. Also in February 2012, the LRAA approved the Bowman Field Safety Program, which aimed to promote airport safety by trimming or removing trees penetrating into Bowman Field airspace. Under the program, the LRAA would obtain avigation easements from neighboring landowners, either through negotiation or through the LRAA's condemnation power. The project would not require federal approval or any federal permits.

Believing that the Safety Program would qualify for federal funding, the LRAA requested and received funds from the FAA to prepare planning documents. However, the grant did not commit the FAA to funding the Safety Program itself; indeed, the FAA never funded the Safety Program. Due to delays in the FAA's environmental-review process, the LRAA decided in April 2016 to complete the project without federal funding. Since that time, the LRAA has repeatedly confirmed its intent to implement the Safety Program using only state funds. To date, the LRAA has acquired a significant number of avigation easements by agreement. Eminent domain proceedings to acquire others are pending in Kentucky state court.

---

[1] When aircraft operate under Visual Flight Rules ("VFR"), pilots navigate using the horizon, buildings, or terrain features as reference points. When aircraft operate under IFR, pilots navigate using navigational instruments and equipment.

Notwithstanding the LRAA's decision to forego federal funding, the FAA finalized its ROD in December 2016, finding that the Safety Program would have no significant environmental impact. The FAA explained that the project would affect only 104 of the roughly 3,600 trees in the area, and that, for every tree removed, the LRAA would plant two (shorter) trees in its place. Given the project's small scope and comprehensive remedial measures, the FAA concluded that the project would have minimal effects on the area's environment or historic properties. However, the ROD did not approve federal funding for the Safety Program. On the contrary, it made clear that it did "not constitute a Federal funding commitment"—it simply provided the environmental findings necessary for the LRAA to seek federal funding in the future.

Petitioners now seek review of the ROD, raising claims under the National Environmental Protection Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*; the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 300101, *et seq.*; and section 4(f) of the Department of Transportation Act, now codified at 49 U.S.C. § 303(c). As relief, Petitioners seek an order setting aside the ROD, remanding the case to the FAA, and enjoining the LRAA from trimming or removing trees until the administrative proceeding is complete. This Court has already denied Petitioners' request for an emergency injunction, expressing concern that we may lack jurisdiction over the petition.

## DISCUSSION

This case presents two issues: (1) whether Petitioners have standing to seek a remand to the FAA; and (2) whether Petitioners have a cause of action against the LRAA. We address each issue in turn.

**I.  Petitioners' Request for a Remand to the FAA**

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, a litigant must satisfy three requirements: (1) "he must demonstrate 'injury in fact'—a harm that is both concrete and actual or imminent, not conjectural or hypothetical"; (2) "he must establish causation—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant"; and (3) "he must demonstrate redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal quotation marks, citations, and alterations omitted).  "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Petitioners seek a remand to the FAA.  But a remand would not remedy Petitioners' alleged injury in fact, i.e., tree trimming and removal under the Safety Program.  Indeed, regardless of the outcome of this case, the LRAA has committed to trimming and removing trees under the Safety Program using its state powers and state funding.  Federal approval is not required.  Consequently, Petitioners have not shown a "substantial likelihood" that the requested relief—remand to the FAA—will "remedy the alleged injury in fact"—tree trimming and removal. *See Vt. Agency of Nat. Res.*, 529 U.S. at 771.  Petitioners lack standing.

This conclusion is buttressed by the District of Columbia Circuit's reasoning in *St. John's United Church of Christ v. FAA*, 520 F.3d 460 (D.C. Cir. 2008).  There, the petitioners challenged an FAA grant of money to the City of Chicago, reimbursing the city for the cost of expanding O'Hare International Airport. *Id.* at 461.  The court ruled that the petitioners lacked

standing, reasoning that vacating the grant "would not redress the petitioners' injuries because Chicago is committed to completing the project anyway." *Id.* at 463. So too here. Except in this case, the challenged order does not even approve federal funding; it merely provides the environmental findings necessary for the LRAA to seek federal funding in the future. And, as discussed above, the LRAA has stated that it has no intention of actually doing so.

## II. Whether Petitioners Have a Cause of Action Against the LRAA

NEPA, the NHPA, and the Transportation Act generally apply only to federal agencies. *See Sw. Williamson Cty. Cmty. Ass'n v. Slater*, 243 F.3d 270, 281 (6th Cir. 2001) ("NEPA applies only to federal agencies, not to the state or private parties."); *W. Mohegan Tribe & Nation of N.Y. v. New York*, 246 F.3d 230, 232 (2d Cir. 2001) ("[T]he law makes it clear that violations of the NHPA can only be committed by a federal agency."); 49 U.S.C. § 303(c) (listing requirements applicable to the Secretary of Transportation). However, in the NEPA context, this Court has held that

> there are two alternative bases for finding that a non-federal project constitutes a "major Federal action" such that NEPA requirements apply: (1) when the non-federal project restricts or limits the statutorily prescribed federal decision-makers' choice of reasonable alternatives; or (2) when the federal decision-makers have authority to exercise sufficient control or responsibility over the non-federal project so as to influence the outcome of the project. If either test is satisfied, the non-federal project must be considered a major federal action.

*Slater*, 243 F.3d at 281 (footnote omitted). Petitioners argue that these exceptions apply to the NHPA and Transportation Act in addition to NEPA, and that they are satisfied here.

However, even if *Slater*'s exceptions apply to all three statutes, they are not satisfied in this case. With regard to *Slater*'s first exception, the LRAA's Safety Program would not restrict or limit the FAA's decision-making process in any related federal project, because there is no related federal project. The only project in this case is the Safety Program itself. Although

Petitioners note that the Safety Program is a response to the FAA's ban on most nighttime IFR landings at Bowman Field, that is irrelevant. The LRAA has authority under state law to proceed with the Safety Program, and it is doing so without funding or direction from the FAA. Federal approval of the program is not required. The project is not federalized merely because federal regulations exist in the background.

Although Petitioners cite *Maryland Conservation Council, Inc. v. Gilchrist*, 808 F.2d 1039 (4th Cir. 1986), that case actually undermines their argument. There, environmentalists and government officials agreed that a federal–state highway project had to run through a state park, but they disagreed about the best route.[2] *Id.* at 1040–41. Before the environmental-review process was complete, the state began constructing significant portions of the highway on either side of the park, leaving the middle section unconstructed pending federal approval. *Id.* The Fourth Circuit ruled that the state's construction could not proceed without NEPA review. The court reasoned that

> [t]he decision of the Secretary of the Interior to approve the project, and the decision of any other Secretary whose authority may extend to the project, would inevitably be influenced if the County were allowed to construct major segments of the highway before issuance of a final [environmental impact statement]. The completed segments would stand like gun barrels pointing into the heartland of the park.

*Id.* at 1042 (quotation marks and citation omitted).

Consequently, in *Gilchrist*, the state's construction of highway segments outside the park limited the choices available to federal officials considering routes inside the park. In other words, the state unduly limited the options of federal officials with decision-making authority

---

[2] Although the park was state-owned, the project was nonetheless considered a "major federal action" because, for various reasons, it required approval from the Secretary of the Interior and possibly the Secretary of the Army and the Secretary of Transportation as well. *Md. Conservation Council, Inc.*, 808 F.2d at 1042.

over substantial parts of the project. By contrast, federal officials in this case do not have decision-making authority over *any* parts of the project. The Safety Program is controlled entirely by the LRAA, without any federal involvement.

With regard to *Slater*'s second exception, Petitioners have not shown that "federal decision-makers have authority to exercise sufficient control or responsibility over the non-federal project so as to influence the outcome of the project." *Slater*, 243 F.3d at 281. Again, federal officials have no control over the Safety Program—the LRAA is implementing the program using its state powers and state funding. And because federal officials cannot influence the program, it is not federalized merely because the LRAA used federal funding in the planning stages. *See, e.g.*, *Gilchrist*, 808 F.2d at 1043 (ruling that a grant of $245,000 in federal funds for preliminary planning was "insufficient to render the [project] a federally-funded transportation project"); *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1101 (9th Cir. 2007) (holding that even where federal funds are used in a state project, NEPA applies only if federal decision-makers "retain power, authority, or control over the state project" (internal quotation marks and citation omitted)).

Finally, Petitioners complain that the LRAA is improperly "segmenting" the Safety Program from the overall federal action in an attempt to avoid federalizing the project. But as explained above, the Safety Program is not a segment of a larger project—it is the *entire* project. It may be true that, as Petitioners argue, the FAA's formulation and enforcement of flight rules are federal actions subject to review under NEPA, the NHPA, and the Transportation Act. However, the FAA's flight rules are not at issue in this case. The only FAA order under review is the ROD, which concerns only the Safety Program—nothing else.

## CONCLUSION

For the foregoing reasons, we **DISMISS** the petition for review.