*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RALPH NADER; PETER MIGUEL CAMEJO; RALPH
NADER FOR PRESIDENT 2004; REFORM PARTY OF
THE UNITED STATES OF AMERICA, by and through its
National Chair Shawn O'Hara; SHAWN O'HARA, in
his individual capacity as Chair of the Reform Party
of the United States of America,

>    *Plaintiffs-Appellants,*

     No. 04-2428

    *v.*

TERRI LYNN LAND, Michigan Secretary of State;
MATTHEW CREHAN,

>    *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-72830—Bernard A. Friedman, Chief District Judge.

Argued: December 1, 2005

Decided and Filed: January 10, 2006

Before: KENNEDY and GIBBONS, Circuit Judges; DONALD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Bruce I. Afran, Princeton, New Jersey, for Appellants. Heather S. Meingast, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, Michael J. Hodge, MILLER, CANFIELD, PADDOCK & STONE, Lansing, Michigan, for Appellees. **ON BRIEF:** Bruce I. Afran, Princeton, New Jersey, Ralph J. Sirlin, REOSTI, JAMES & SIRLIN, Pleasant Ridge, Michigan, Bruce T. Wick, Westlake, Ohio, for Appellants. Heather S. Meingast, Patrick J. O'Brien, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

---

[*]The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

---

**OPINION**

---

KENNEDY, Circuit Judge.  Plaintiffs brought this declaratory action requesting that the court find that during the Presidential Election in 2004, the Michigan Secretary of State had a duty to certify one faction of the Reform Party's candidates for President.  The district court dismissed Plaintiffs' case under Federal Rule of Civil Procedure 41(b) for failure to prosecute and because Plaintiff Nader elected to appear on the ballot as an independent candidate.  For the following reasons, we **AFFIRM** the dismissal of election claims 1-5 and **REVERSE** the dismissal of causes of action 6 and 7.

## *BACKGROUND*

Plaintiffs, Nader, Camejo, Ralph Nader for President 2004, the Reform Party of the United States and Chairman O'Hara, filed the instant declaratory judgment action after the Michigan Secretary of State refused to certify Nader and Camejo as the Reform Party's nominees for President and Vice President of the United States.  As the history of disagreement within the Reform Party of Michigan is critical to our decision, a brief overview of past elections is necessary.

*The 2000 Election Cycle*

The first disagreements between the members of the Reform Party of Michigan came to light during the 2000 election when the Secretary of State of Michigan, Secretary Land, received two certifications from the Reform Party of Michigan.  The first certification named Mark Forton as chairperson and Tracy DeNise as secretary and certified Patrick Buchanan as the nominee for President and Ezola Foster as the party's nominee for Vice President.  The second certification named Diane McKelvey as the chairperson, Eleanor Renfrew as the secretary and nominated John Hagelin for President and Nat Goldhaber for Vice President.

Prior to this confusion, Perry Spence was unquestionably the Reform Party of Michigan's chairperson until July 14, 2000, at which point he resigned.  McKelvey was the vice-chairperson at this time and was selected chairperson on July 28, 2000, at a board meeting.  However, on August 5, 2000, Forton arranged a meeting where those present purported to recall four individuals from the executive board of the Reform Party of Michigan and then fill those vacancies.  The "new" members of the board then elected Forton as chairperson and DeNise as secretary.  Thus, the two factions of the Reform Party of Michigan were created, leading to Secretary Land's receipt of two requests for certification.

Pursuant to Michigan Election Law, the Secretary of State is required to certify the candidates for the offices of President and Vice President of the United States who have been named by the chairperson and secretary of the state party committees.  MCL § 168.686.  However, in light of this dispute, the Secretary of State refused to certify nominees from either faction.  Buchanan, Foster and Forton subsequently filed suit in state court requesting a writ of mandamus compelling the Secretary to place the Buchanan faction of nominees on the ballot.  The Ingham County Circuit Court ruled that because a substantial factual dispute regarding who led the Reform party existed, the Secretary of State had no clear legal duty to place those names on the Michigan Presidential

ballot.[1]  Thus, the 2000 election litigation ended without a resolution as to which faction should be recognized.

*2002 Election Cycle*

In May 2002, Forton informed the Bureau of Elections that the Reform Party of Michigan voted to disaffiliate from the Reform Party of the United State of America, the national organization. Then on July 27, 2002, the Reform Party of Michigan convened and nominated candidates for several offices in the 2002 general election. The Secretary of State accepted those nominations as it appeared the conflict had been resolved and there was no objection from any other faction of the Reform Party of Michigan. Thus, those candidates were listed on the ballot without any objection and it appeared the Buchanan faction, with Forton acting as chairperson, led the Reform Party of Michigan.  Notably, under MCL § 168.685(6), if the Reform Party of Michigan had not nominated candidates for the 2002 election cycle, it would have lost its ballot access for the 2004 cycle.

*2004 Election Cycle*

On June 25, 2004, the Bureau of Elections received a certification of nomination from the Reform Party of Michigan (from Muntz as chairperson, and Renfrew, as secretary), listing Ralph Nader for President and Peter Camejo for Vice President.  On July 6, 2004, however, Defendant Crehan told the Bureau of Elections that the certification of Nader/Camejo was "fraudulent" as he, Crehan, was the elected chairperson of the Reform Party of Michigan and that Muntz/Renfrew were actually officers of the Independence Party of Michigan, a group attempting to become qualified as a political party.

On or about July 8, 2004, Plaintiff O'Hara, as undisputed chairperson of the Reform Party of the United States of America, addressed a letter to the Bureau of Elections, asserting that the national party recognized Muntz and Renfrew as the chairperson and secretary of the Reform Party of Michigan.

On July 9, 2004, the Secretary of State informed Crehan and Muntz that she was unable to accept the certification of Nader/Camejo as nominees of a qualified political party as "it is apparent that two individuals claim to be Chairperson of the Reform Party of Michigan and two individuals claim to be Secretary of the Reform Party of Michigan."  Since this dispute arose earlier in the election cycle than it had in 2000, the Secretary of State urged the two factions to resolve their differences.

The two factions did not work out their differences and on July 26, 2004, the Bureau of Elections  received a letter from Crehan as chairperson and Charlene Truskzkowski as secretary, of the Reform Party of Michigan.  The Crehan/Truskzkowski faction did not nominate anyone for the offices of President and Vice-President, but they did nominate candidates for other positions.  The Muntz/Renfrew faction, also as alleged chairperson and secretary of the Reform Party of Michigan,

---

[1]Additionally, two members of the Buchanan faction, Watson and Robinson, filed a Complaint for Declaratory and Injunctive Relief and a Motion for Preliminary Injunction in the United States District Court for the Eastern District of Michigan, arguing that the Secretary of State's failure to certify Buchanan and Foster as the Reform Party's nominees violated their rights under the First and Fourteenth Amendments of the United States Constitution. *Watson v. Secretary of State*, USDC, Eastern Dist., S. Div., Case No. 00-40336.  The district court denied their motion and concluded the plaintiffs were essentially seeking a writ of mandamus, which the Michigan courts had already denied to Buchanan and Foster, and that the plaintiffs were unlikely to succeed on the merits of the claim.  Watson and Robinson then filed an Emergency Motion for Immediate Consideration and Request for Injunction Pending Appeal in this court which was denied.  They then filed an Emergency Application for Injunction Pending Appeal with the United States Supreme Court that was denied.  Finally they stipulated to dismiss the appeal to this court and dismissed the case pending in the district court.

submitted nominations for Nader/Camejo for President and Vice-President as well as candidates for other state offices.  The Secretary of State refused to certify the nominations from either faction.

However, Nader/Camejo did eventually appear on the Michigan ballot as candidates for President and Vice-President.  Under Michigan Election Law, a person seeking office *without a political party* (as the Secretary never certified them) may file a "qualifying petition" to appear on a ballot as an independent candidate if they gather the requisite number of signatures from registered voters throughout the state.  MCL §168.590b(1).  On July 15, 2004, the Michigan Republican Party filed an estimated 45,040 elector signatures on behalf of Plaintiff Nader to run as an independent candidate and Nader filed 5,463 elector signatures.  The Bureau of Elections accepted the qualifying petition and the signatures submitted by the Republicans and Nader.[2]  Notably, Plaintiff Nader did not withdraw the qualifying petition within three days of filing, as he was permitted under MCL §168.590c(3).  Thus, Nader ran as an independent candidate in 2004.

*Procedural History*

After the filing of this action on August 23, 2004, Plaintiffs moved in the district court by order to show cause for a declaratory judgment and injunction directing the Secretary of State to place Nader/Camejo on the ballot as the presidential and vice-presidential candidates of the Reform Party. The district court entered a bench opinion denying the requested relief as there was an unresolved dispute as to who controlled the Reform Party of Michigan and thus, the Secretary had no clear duty under Michigan law to accept certification from either faction.  The court also held that since Nader/Camejo failed to withdraw from a separate, non-Reform party independent ballot position, Nader was precluded from maintaining a claim to the Reform Party nomination.  The basis for this ruling was that Michigan law prohibits a candidate from seeking nomination on both independent and party columns.  On September 10, 2004, Plaintiffs filed a Notice and Claim of Appeal with this Court from the district court's order asking this court to hear the appeal as an order denying a motion to show cause is not final, but interlocutory.  Plaintiffs did not move for a stay in the district court and when the Plaintiffs failed to appear at a scheduled pre-trial conference, the district court dismissed Plaintiffs' complaint for lack of prosecution and entered judgment in favor of Defendants.  We denied Plaintiffs' Motion to Expedite the Appeal as untimely as no relief could be granted with respect to the November General Election ballot.

Plaintiffs appeal both the Order denying the show-cause motion and the Order of involuntary dismissal.

## I.  Mootness

Under the "case or controversy" requirement in Article III of the United States Constitution, federal courts only have jurisdiction to decide cases that affect the rights of litigants.  *Southwest Williamson County Cmty Assoc v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001).  Thus, as a preliminary matter we must first determine whether, as Defendants allege, this case is moot.  The Supreme Court has held that when considering the potential mootness of a claim for declaratory relief, "the question is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694 (1974) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510 (1941)).  "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must

---

[2]Some dispute existed as to whether the signatures were sufficient and whether Nader should appear on the ballot; however, in *Deleeuw v. State Bd of Canvassers*, 263 Mich. App. 497 (2004), the Michigan Court of Appeals issued an opinion concluding that the signatures were valid and ordered the qualifying petition be certified.

be dismissed." *Church of Scientology of California v. United States,* 506 U.S. 9, 12 (1992) (quotation omitted).

Defendants argue that this case is moot for two reasons: first, relief can no longer be granted because the 2004 election is over and, second, because Nader/Camejo appeared on the ballot as independents and under Michigan Election law a candidate cannot run as both an independent and as a candidate of a political party. Plaintiffs counter by arguing that this case fits under an the "capable of repetition yet evading review" exception to the mootness doctrine, under which matters are to be reviewed on appeal even after the conclusion of the event for which relief is sought. Plaintiffs note that elections, because of their ephemeral nature are particularly suited for this doctrine.

Without reaching Defendants' first argument, we find Defendants' second argument persuasive.[3] Under MCL §168.590g(1), a "person who files a qualifying petition...*shall not be nominated as a candidate...by a political party convention....*" (emphasis added). A qualifying petition was filed on behalf of Nader and Camejo and they never sought to withdraw that petition under MCL §168.590c(3) (a candidate who "files a qualifying petition shall not be permitted to withdraw his...candidacy unless a written notice of withdrawal is filed with the filing officer who received the petition. The notice shall be filed not later than 4 p.m. of the third day after the last day of filing a qualifying petition.").

Thus, because a candidate cannot run as both an independent and with a party under Michigan Election Law, the Plaintiffs voluntarily and willingly gave up their claim to run on the ballot under the Reform Party ticket by submitting and by not withdrawing a qualifying petition. MCL §168.590g(1). As we are unable to grant Plaintiffs "any effectual relief" and declare Nader/Camejo as the 2004 nominees of the Reform Party of Michigan, we find Plaintiffs' claim that the Secretary of State was under a duty to certify a particular faction of Reform Party candidates moot. *See Church of Scientology of California*, 506 U.S. at 12.

## II.  Involuntary Dismissal of Plaintiffs' Complaint

Plaintiffs also contend the district court abused its discretion by dismissing Plaintiffs' complaint, with prejudice, pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute because the Plaintiffs did not appear for the scheduled pre-trial conference on September 30, 2004. Plaintiffs admit that the Nader Plaintiffs did not wish to pursue their claims because the issues with which they were concerned are matters addressed on the order to show cause; however, the Reform Party of the United States argues that the Sixth and Seventh Causes of action concern factual questions as to control of the state party that still require resolution in a fact-finding forum, either federal or state. The Reform Party of the United States does not plan on proceeding with these claims at this time; however, it points out that the district court's order was a dismissal with prejudice which would prevent them from adjudicating these claims in the future.

In this circuit we often have reversed a district court's decision to dismiss a complaint because litigants failed to appear, especially absent bad faith, or absent notice to the Plaintiffs that the court is contemplating involuntary dismissal. *See Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988) (extracting the principle from similar cases that "in the absence of notice that dismissal is contemplated by a district court should impose a penalty short of dismissal unless the derelict party has engaged in 'bad faith or contumacious conduct'")*; see Carter v. City of Memphis,* 636 F.2d 159, 161 (6th Cir. 1980) (courts should dismiss only in "extreme situations" of deliberate delay or

---

[3]We note that while the district court did not decide the case under the mootness doctrine, the court did base part of its decision on the fact that because Nader and Camejo ran as independent candidates, they were prevented under Michigan law from also running as Reform Party candidates.

"contumacious conduct"); *Holt v. Pitts,* 619 F.2d 558, 562 (6th Cir. 1980) (same); *Patterson v. Township of Grand Blanc,* 760 F.2d 686, 688 (1985) (same); *Bishop v. Cross,* 790 F.2d 38, 39 (6th Cir. 1986) (dismissal requires a "degree of willfulness, bad faith or contumacious conduct").

Thus, as it appears no notice was given to the Plaintiffs that the district court was considering involuntary dismissal and as the Plaintiffs only missed one appearance, we find the district court abused its discretion by dismissing this complaint with prejudice.

## *CONCLUSION*

For the foregoing reasons we **AFFIRM** the district court's order dismissing Plaintiffs' case. We **REVERSE** the district court's dismissal, with prejudice, of counts 6 and 7 of the Plaintiffs' complaint and **REMAND** to the district court with instructions to grant appellant's request that claims 6 and 7 be voluntarily dismissed without prejudice under Fed. R. Civ. P. 41(a).